UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| MCI COMMUNICATIONS SERVICES, INC. and VERIZON SELECT SERVICES INC., <br><br> Plaintiffs, <br><br> v. <br><br> ATLANTIC TELEPHONE MEMBERSHIP CORPORATION; CAROLINA TELEPHONE AND TELEGRAPH COMPANY LLC; CENTRAL TELEPHONE COMPANY; CENTRAL TELEPHONE COMPANY OF NORTH CAROLINA; CITIZENS TELEPHONE COMPANY; COMPORIUM, INC.; MEBTEL, INC.; NORTH STATE TELEPHONE COMPANY; RANDOLPH TELEPHONE MEMBERSHIP CORPORATION; SKYLINE TELEPHONE MEMBERSHIP CORPORATION; STAR TELEPHONE MEMBERSHIP CORPORATION; SURRY TELEPHONE MEMBERSHIP CORPORATION; UNITED TELEPHONE COMPANY OF THE CAROLINAS LLC; US LEC OF ALABAMA LLC; US LEC OF FLORIDA LLC; US LEC OF MARYLAND LLC; US LEC OF NORTH CAROLINA LLC; WILKES TELEPHONE MEMBERSHIP CORPORATION; WINDSTREAM CONCORD TELEPHONE, INC; WINDSTREAM LEXCOM COMMUNICATIONS, INC.; WINDSTREAM NORTH CAROLINA, LLC; and THE YADKIN VALLEY TELEPHONE MEMBERSHIP CORPORATION <br><br> Defendants. | Case No. 7:14-CV-188 |

## FIRST AMENDED COMPLAINT

MCI Communications Services, Inc. and Verizon Select Services Inc. (collectively "Verizon"), by and through their attorneys, bring this First Amended Complaint against the above-captioned Defendants (collectively, "Defendants") as follows:

## INTRODUCTION

1.      This action arises from Defendants' improper imposition of "access charges" on wireless calls.  Defendants are local telephone companies (also known as "local exchange carriers" or "LECs"), which may charge other carriers that use their networks to originate or terminate calls.  When a call is made between two exchanges, the LEC may impose "access charges" as set forth in its tariff.  The Federal Communications Commission ("FCC") and the federal courts have made clear, however, that wireless calls that originate and terminate within the same geographic area known as a Major Trading Area ("MTA") are not subject to access charges; this rule applies even when the calls are interexchange and even when a long distance company like Verizon carries the calls between the local phone company and the wireless carrier.  Nevertheless, Defendants have imposed, and continue to impose, access charges on wireless intraMTA calls carried by Verizon.  Verizon will not pay Defendants' bills for access charges on wireless intraMTA calls.  Verizon brings this action (a) to recover the access charges Defendants have improperly charged Verizon in the past on wireless intraMTA calls, (b) for a declaration that Defendants may not impose such charges, and (c) for a declaration that Verizon is entitled to withhold payment for such charges.

2.      Historically, in the context of wireline phone service, a distinction was established between "local" and "interexchange" calls.  Wireline calls made and received within a "local exchange" (as defined by the relevant state public utilities commissions) were deemed local calls.  Wireline calls from one local exchange to another were deemed interexchange calls.

25099045.1

LECs own or control lines that connect end-users to the telephone network.  When an end-user

places an interexchange call, the LEC generally transfers the call to a long-distance carrier,

which delivers the call to the LEC serving the called party.

3.      For wireline interexchange calls, LECs may impose "access charges" on long-

distance carriers for the use of the LECs' network.  The charges for the transport of calls over the

network from the calling party's LEC to the calling party's long-distance network are known as

"originating switched access charges," while the charges for the transport of calls over the

network of the called party's LEC's network from the long-distance carrier are known as

"terminating switched access charges."  These charges are set forth in each LEC's access tariffs.

Access charges for interexchange calls that originate and terminate within the same state (*i.e.*,

intrastate long-distance) are governed by tariffs filed by the LECs with the state public utilities

commission.  Access charges for interexchange calls that originate in one state and terminate in a

different state (*i.e.*, interstate long-distance) are governed by tariffs filed by the LECs with the

FCC.

4.       Whereas local calling areas for wireline service were historically defined by the

state public utilities commissions, the FCC defined the geographical area within which a wireless

call is not subject to access charges.  The FCC decided that wireless calls that originate and

terminate within the same MTA are deemed the equivalent of local calls for purposes of

intercarrier compensation and, as such, are not subject to intrastate or interstate access charges.

5.      The FCC has issued various rules and decisions stating that LECs may not charge

switched access charges for wireless intraMTA calls.  Federal courts that have considered the

issue have uniformly upheld these rules and decisions.  Defendants are LECs who have charged,

and continue to charge, switched access charges to Verizon for wireless intraMTA calls.

Verizon has informed Defendants that it will no longer pay access charges on wireless intraMTA

calls.  Verizon seeks to recover access charges on wireless intraMTA calls it has paid in the past,

and to obtain a declaration that Defendants may not impose such charges in the future.

## PARTIES

6.      Plaintiff MCI Communications Services, Inc. is a Delaware corporation with its

principal place of business in New Jersey.

7.      Plaintiff Verizon Select Services Inc. is a Delaware corporation with its principal

place of business in Virginia.

8.      Defendant Atlantic Telephone Membership Corporation is a corporation which:

(a) at all relevant times, is and has been qualified and registered to do business in the state of

North Carolina; (b) conducts operations in North Carolina; (c) maintains a registered agent for

the service of process in North Carolina, and/or (d) is incorporated in North Carolina.

9.      Defendant Carolina Telephone and Telegraph Company LLC is a limited liability

company which: (a) at all relevant times, is and has been qualified and registered to do business

in the state of North Carolina; (b) conducts operations in North Carolina; (c) maintains a

registered agent for the service of process in North Carolina, and/or (d) is incorporated in North

Carolina.

10.     Defendant Central Telephone Company is a corporation which: (a) at all relevant

times, is and has been qualified and registered to do business in the state of North Carolina; (b)

conducts operations in North Carolina; (c) maintains a registered agent for the service of process

in North Carolina, and/or (d) is incorporated in North Carolina.

11.     Defendant Central Telephone Company of North Carolina is a corporation which:

(a) at all relevant times, is and has been qualified and registered to do business in the state of

North Carolina; (b) conducts operations in North Carolina; (c) maintains a registered agent for the service of process in North Carolina, and/or (d) is incorporated in North Carolina.

12.     Defendant Citizens Telephone Company is a corporation which: (a) at all relevant times, is and has been qualified and registered to do business in the state of North Carolina; (b) conducts operations in North Carolina; (c) maintains a registered agent for the service of process in North Carolina, and/or (d) is incorporated in North Carolina.

13.     Defendant Comporium, Inc. is a corporation which: (a) at all relevant times, is and has been qualified and registered to do business in the state of North Carolina; (b) conducts operations in North Carolina; (c) maintains a registered agent for the service of process in North Carolina, and/or (d) is incorporated in North Carolina.

14.     Defendant Mebtel, Inc. is a corporation which: (a) at all relevant times, is and has been qualified and registered to do business in the state of North Carolina; (b) conducts operations in North Carolina; (c) maintains a registered agent for the service of process in North Carolina, and/or (d) is incorporated in North Carolina.

15.     Defendant North State Telephone Company is a corporation which: (a) at all relevant times, is and has been qualified and registered to do business in the state of North Carolina; (b) conducts operations in North Carolina; (c) maintains a registered agent for the service of process in North Carolina, and/or (d) is incorporated in North Carolina.

16.     Defendant Randolph Telephone Membership Corporation is a corporation which: (a) at all relevant times, is and has been qualified and registered to do business in the state of North Carolina; (b) conducts operations in North Carolina; (c) maintains a registered agent for the service of process in North Carolina, and/or (d) is incorporated in North Carolina.

17.     Defendant Skyline Telephone Membership Corporation is a corporation which: (a) at all relevant times, is and has been qualified and registered to do business in the state of North Carolina; (b) conducts operations in North Carolina; (c) maintains a registered agent for the service of process in North Carolina, and/or (d) is incorporated in North Carolina.

18.     Defendant Star Telephone Membership Corporation is a corporation which: (a) at all relevant times, is and has been qualified and registered to do business in the state of North Carolina; (b) conducts operations in North Carolina; (c) maintains a registered agent for the service of process in North Carolina, and/or (d) is incorporated in North Carolina.

19.     Defendant Surry Telephone Membership Corporation is a corporation which: (a) at all relevant times, is and has been qualified and registered to do business in the state of North Carolina; (b) conducts operations in North Carolina; (c) maintains a registered agent for the service of process in North Carolina, and/or (d) is incorporated in North Carolina.

20.     Defendant United Telephone Company Of The Carolinas LLC is a limited liability company which: (a) at all relevant times, is and has been qualified and registered to do business in the state of North Carolina; (b) conducts operations in North Carolina; (c) maintains a registered agent for the service of process in North Carolina, and/or (d) is incorporated in North Carolina.

21.     Defendant US LEC Of Alabama LLC is a limited liability company which: (a) at all relevant times, is and has been qualified and registered to do business in the state of North Carolina; (b) conducts operations in North Carolina; (c) maintains a registered agent for the service of process in North Carolina, and/or (d) is incorporated in North Carolina.

22.     Defendant US LEC Of Florida LLC is a limited liability company which: (a) at all relevant times, is and has been qualified and registered to do business in the state of North

Carolina; (b) conducts operations in North Carolina; (c) maintains a registered agent for the service of process in North Carolina, and/or (d) is incorporated in North Carolina.

23.     Defendant US LEC Of Maryland LLC is a limited liability company which: (a) at all relevant times, is and has been qualified and registered to do business in the state of North Carolina; (b) conducts operations in North Carolina; (c) maintains a registered agent for the service of process in North Carolina, and/or (d) is incorporated in North Carolina.

24.     Defendant US LEC Of North Carolina LLC is a limited liability company which: (a) at all relevant times, is and has been qualified and registered to do business in the state of North Carolina; (b) conducts operations in North Carolina; (c) maintains a registered agent for the service of process in North Carolina, and/or (d) is incorporated in North Carolina.

25.     Defendant Wilkes Telephone Membership Corporation is a corporation which: (a) at all relevant times, is and has been qualified and registered to do business in the state of North Carolina; (b) conducts operations in North Carolina; (c) maintains a registered agent for the service of process in North Carolina, and/or (d) is incorporated in North Carolina.

26.     Defendant Windstream Concord Telephone, Inc. is a corporation which: (a) at all relevant times, is and has been qualified and registered to do business in the state of North Carolina; (b) conducts operations in North Carolina; (c) maintains a registered agent for the service of process in North Carolina, and/or (d) is incorporated in North Carolina.

27.     Defendant Windstream Lexcom Communications, Inc. is a corporation which: (a) at all relevant times, is and has been qualified and registered to do business in the state of North Carolina; (b) conducts operations in North Carolina; (c) maintains a registered agent for the service of process in North Carolina, and/or (d) is incorporated in North Carolina.

28.     Defendant Windstream North Carolina, LLC is a corporation which: (a) at all relevant times, is and has been qualified and registered to do business in the state of North Carolina; (b) conducts operations in North Carolina; (c) maintains a registered agent for the service of process in North Carolina, and/or (d) is incorporated in North Carolina.

29.     Defendant The Yadkin Valley Telephone Membership Corporation is a corporation which: (a) at all relevant times, is and has been qualified and registered to do business in the state of North Carolina; (b) conducts operations in North Carolina; (c) maintains a registered agent for the service of process in North Carolina, and/or (d) is incorporated in North Carolina.

## JURISDICTION AND VENUE

30.     This Court has personal jurisdiction over each of the Defendants because each conducts or has conducted continuous, systematic and routine business within the state in which this district sits; and/or the state wherein this district sits is their state of incorporation; and/or the state wherein this district sits is their principal place of business.

31.     This Court has subject matter jurisdiction over the parties to this action pursuant to 28 U.S.C. §§ 1331 and 47 U.S.C. §§ 206 and 207, because Verizon's claims arise under the Communications Act of 1934, a law of the United States.  Specifically, the Court has jurisdiction pursuant to these provisions because Defendants billed Verizon improperly on wireless intraMTA calls pursuant to their interstate access tariffs and those practices violate the Communications Act.

32.     Defendants also billed Verizon improperly on wireless intraMTA calls pursuant to their intrastate access tariffs filed with public utilities commissions under state law.  The Court has supplemental jurisdiction over these pendent state law claims pursuant to 28 U.S.C. § 1367(a).

25099045.1

8

33.     This Court also has jurisdiction over Verizon's requests for declaratory relief under 28 U.S.C. §§ 2201 and 2202.

34.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because Defendants conduct or have conducted continuous, systematic and routine business within the district or the state; and/or the district or the state is their state of incorporation; and/or the district or the state is their principal place of business; and/or a substantial part of the events giving rise to the claims alleged herein occurred in counties located in the district.

## GENERAL ALLEGATIONS

**B.      Wireless IntraMTA Calls Are Not Subject To Switched Access Charges**

35.     In 1996, the FCC promulgated rules providing that wireless intraMTA traffic is not subject to access charges.  47 C.F.R. § 51.701(b)(2) (1996).  The rules stated that "[t]elecommunications traffic exchanged between a LEC and a [wireless] provider that, at the beginning of the call, originates and terminates within the same Major Trading Area" is not subject to access charges.  That rule has not been materially modified, and remains in effect to this day.

36.     In 1996, the FCC also issued its "First Report and Order" implementing the local competition provisions in the Telecommunications Act of 1996.  One of the provisions of that Act requires LECs to "establish reciprocal compensation arrangements for the transport and termination of telecommunications."  47 U.S.C. § 251(b)(5).  The FCC applied this provision to wireless traffic (wireless carriers are also referred to as Commercial Mobile Radio Service, or "CMRS," carriers):

> 1034.  We conclude that section 251(b)(5) reciprocal compensation obligations should apply only to traffic that originates and terminates within a local area, as defined in the following paragraph. . . .

1035.  With the exception of traffic to or from a CMRS network, state commissions have the authority to determine what geographic areas should be considered 'local areas' for the purpose of applying reciprocal compensation obligations under section 251(b)(5). . . .

1036.  On the other hand, in light of this Commission's exclusive authority to define the authorized license areas of wireless carriers, we will define the local service area for calls to or from a CMRS network for the purposes of applying reciprocal compensation obligations under section 251(b)(5). . . .[W]e conclude that the largest FCC-authorized wireless license territory (*i.e.*, MTA) serves as the most appropriate definition for local service area for CMRS traffic for purposes of reciprocal compensation under section 251(b)(5) as it avoids creating artificial distinctions between CMRS providers.  Accordingly, traffic to or from a CMRS network that originates and terminates within the same MTA is subject to transport and termination rates under section 251(b)(5), rather than interstate and intrastate access charges.

*In re Implementation of the Local Competition Provisions of the Telecomms. Act of 1996*, 11 FCC Rcd 15499 ¶¶ 1034-1036 (1996) ("First Report and Order") (subsequent history omitted), (footnotes omitted).

37.     Wireless calls can be exchanged directly between a wireless carrier and a LEC, or indirectly, meaning the call traverses the network of an intermediate carrier before reaching terminating carrier.  Verizon, as a long-distance carrier, is such an intermediate carrier.  When a LEC delivers a call to Verizon for termination to a wireless phone, or when a wireless carrier delivers a call to Verizon which it delivers to a LEC, Verizon generally carries the calls over what are known as Feature Group D trunks.

38.     Federal courts have uniformly held that switched access charges cannot be imposed on calls made from a wireless phone to a wireline phone within the same MTA, or on calls made from a wireline phone to a wireless phone within the same MTA, regardless of whether the calls are transported through an intermediate carrier, including over a Feature Group D facility.  *See, e.g.*, *Iowa Network Servs., Inc. v. Qwest Corp.*, 466 F.3d 1091 (8th Cir. 2006); *Alma Commc'ns Co. v. Missouri Pub. Serv. Commc'ns*, 490 F.3d 619 (8th Cir. 2007).

39.     In November 2011, the FCC issued its decision in *In re Connect America Fund*, 26 FCC Rcd 17663 (2011) (Report and Order and Notice of Further Rulemaking, *"Connect America"*), *final rules published*, 76 Fed. Reg. 73830 (Nov. 29, 2011), *recon. in part*, 2011 WL 6778613 (Dec. 23, 2011) (subsequent history omitted).   In that order, the FCC affirmed that intraMTA traffic is not subject to switched access charges when the call is carried by an intermediate long-distance carrier.   Specifically the FCC stated:

> 1003. In the *Local Competition First Report and Order*, the Commission stated that calls between a LEC and a CMRS provider that originate and terminate within the same Major Trading Area (MTA) at the time that the call is initiated are subject to reciprocal compensation obligations under section 251(b)(5), rather than interstate or intrastate access charges. . . .

> 1004. The record presents several issues regarding the scope and interpretation of the intraMTA rule.   Because the changes we adopt in this Order maintain, during the transition, distinctions in the compensation available under the reciprocal compensation regime and compensation owed under the access regime, parties must continue to rely on the intraMTA rule to define the scope of LEC-CMRS traffic that falls under the reciprocal compensation regime.   ***We therefore take this opportunity to remove any ambiguity regarding the interpretation of the intraMTA rule.***

> ***

> 1007. In a further pending dispute, some LECs have argued that if completing a call to a CMRS provider requires a LEC to route the call to an intermediary carrier outside the LEC's local calling area,[FN2129] the call is subject to access charges, not reciprocal compensation, even if the call originates and terminates within the same MTA.   One commenter in this proceeding asks us to affirm that such traffic is subject to reciprocal compensation.   ***We therefore clarify that the intraMTA rule means that all traffic exchanged between a LEC and a CMRS provider that originates and terminates within the same MTA, as determined at the time the call is initiated, is subject to reciprocal compensation regardless of whether or not the call is, prior to termination, routed to a point located outside that MTA or outside the local calling area of the LEC.[FN2132] Similarly, intraMTA traffic is subject to reciprocal compensation regardless of whether the two end carriers are directly connected or exchange traffic indirectly via a transit carrier.***   [FN2133]

>> FN2129. This occurs when the LEC and CMRS provider are "indirectly interconnected," i.e. when there is a third carrier to

which they both have direct connections, and which is then used as a conduit for the exchange of traffic between them.

FN2132. . . . We find that the potential implementation issues raised by Vantage Point do not warrant a different construction of the intraMTA rule than what we adopt above.  Although Vantage Point questions whether the intraMTA rule is feasible when a call is routed through interexchange carriers, many incumbent LECs have already, pursuant to state commission and appellate court decisions, extended reciprocal compensation arrangements with CMRS providers to intraMTA traffic without regard to whether a call is routed through interexchange carriers.  *See, e.g.*, *Alma Communications Co. v. Missouri Public Service Comm'n*, 490 F.3d 619, 623-34 (8th Cir. 2007) (noting and affirming arbitration decision requiring incumbent LEC to compensate CMRS provider for costs incurred in transporting and terminating land-line to cell-phone calls placed to cell phones within the same MTA, even if those calls were routed through a long-distance carrier); *Atlas Telephone Co. v. Oklahoma Corp. Comm'n*, 400 F.3d 1256 (10th Cir. 2005).  Further, while Vantage Point asserts that it is not currently possible to determine if a call is interMTA or intraMTA, Vantage Point Oct. 21, 2011 Ex Parte Letter at 2-3, the Commission addressed this concern when it adopted the rule.  *See Local Competition First Report and Order*, 11 FCC Rcd at 16017, para. 1044 (stating that parties may calculate overall compensation amounts by extrapolating from traffic studies and samples).

FN2133. *See* Sprint Nextel Section XV Comments at 22-23 (arguing that the Commission should reaffirm that all intraMTA traffic to or from a CMRS provider is subject to reciprocal compensation).  ***This clarification is consistent with how the intraMTA rule has been interpreted by the federal appellate courts.***  *See Alma Communications Co. v. Missouri Public Service Comm'n*, 490 F.3d 619 (8th Cir. 2007); *Iowa Network Services, Inc. v. Qwest Corp.*, 466 F.3d 1091 (8th Cir. 2006); *Atlas Telephone Co. v. Oklahoma Corp. Commission*, 400 F.3d 1256 (10th Cir. 2005).

*Connect America* ¶¶ 1003-1007 (emphasis added) (certain footnotes omitted).

40.     Given the FCC rules and decisions as well as the federal court decisions, liability on each of Verizon's claims presents an identical question of law, and none of the legal issues or related claims should require unique or individualized proof to establish liability.

**C.**  **Defendants Improperly Billed Verizon Switched Access Charges On Wireless intraMTA Calls**

41.     At all relevant times, Defendants had interstate access tariffs on file with the FCC. Defendants billed Verizon originating and/or terminating switched access charges, purportedly pursuant to their interstate tariffs.  Those billings for interstate access charges included billings for wireless calls that originated and terminated within the same MTA.

42.     At all relevant times, Defendants had intrastate access tariffs on file with the various state public utilities commissions.  Defendants billed Verizon originating and/or terminating switched access charges, purportedly pursuant to these tariffs.  The billings for intrastate access charges included billings for wireless calls that originated and terminated within the same MTA.

43.     Defendants do not have negotiated contracts with Verizon for access related services that would limit or bar Verizon's claims.

### COUNT NO. 1.

### 47 U.S.C. 206, 207 Claim for Violation of 47 U.S.C. § 201(b)

### (Interstate Wireless IntraMTA Calling)

### (All Defendants)

44.     Verizon repeats and realleges each and every allegation above, and incorporates them by reference as though fully set forth herein.

45.     Defendants are common carriers and have each improperly billed, and continue to improperly bill, originating and terminating switched access charges to Verizon from their interstate tariffs on interstate, wireless intraMTA calls in violation of their duties as common carriers under Section 201(b).

46.     The FCC's rules and decisions, as affirmed by federal courts, state that the interstate access tariffs do not provide a basis to charge or collect interstate access charges from Verizon on wireless intraMTA traffic.

47.     The FCC has stated that a LEC engages in an unjust and unreasonable practice under Section 201(b) when it bills a long-distance carrier for tariffed access charges without a basis to do so under its tariff, or charges a carrier for origination or termination of wireless intraMTA traffic.

48.     Defendants therefore have engaged and continue to engage in an unjust and unreasonable practice in connection with their respective provision of interstate communication services, in violation of their common carrier obligations.

49.     Defendants' violations of Section 201(b) have caused Verizon to suffer damages in an amount that Verizon will prove at trial.  Verizon therefore has the right to sue for its damages resulting from Defendants' violations of Section 201(b), pursuant to Sections 206 and 207 of Title 47 of the United States Code.  Pursuant to Section 206, Verizon also seeks its reasonable attorneys' fees and costs incurred in this litigation.

## COUNT NO. 2.

### 47 U.S.C. §§ 206, 207 Claim for Violation of 47 U.S.C. § 203

### (Interstate Wireless IntraMTA Calling)

### (All Defendants)

50.     Verizon repeats and realleges each and every allegation above, and incorporates them by reference as though fully set forth herein.

51.     On information and belief, the Defendants' interstate access tariffs do not explicitly exempt wireless intraMTA calls.  To the extent those tariffs apply by their terms to

wireless intraMTA calls, they conflict with FCC rules and are *ultra vires*. Defendants cannot bill or collect tariffed charges on wireless intraMTA traffic.

52. Defendants' billing of charges that are *ultra vires* violates Sections 203(a) and (c).

53. Defendants' violations of Section 203 have caused Verizon to suffer damages in an amount that Verizon will prove at trial. Verizon therefore has the right to sue for its damages resulting from Defendants' respective violations of Section 203, pursuant to Sections 206 and 207 of Title 47 of the United States Code. Pursuant to Section 206, Verizon also seeks its reasonable attorneys' fees and costs incurred in this litigation.

## COUNT NO. 3.

## Breach of Contract/Interstate Wireless IntraMTA Calling

### (All Defendants)

54. Verizon repeats and realleges each and every allegation above, and incorporates them by reference as though fully set forth herein.

55. Defendants' interstate switched access tariffs constitute contracts between each of the Defendants and any purchaser of services from those tariffs, which includes Verizon.

56. Defendants have charged, and continue to charge, Verizon switched access charges on interstate wireless intraMTA calls that do not qualify for such charges, in violation of their respective interstate access tariffs.

57. Defendants are in breach of their respective tariff provisions when they bill Verizon for interstate wireless intraMTA calls, as they do not qualify for such charges. To the extent the tariffs purport to allow such charges, they are unenforceable.

58. As a direct and proximate result of Defendants' conduct as alleged above, Verizon has been damaged in an amount to be proven at trial.

## COUNT NO. 4.

### Breach of Contract/Intrastate Wireless IntraMTA Calling (Alabama)

### (Against US LEC OF ALABAMA LLC)

59.     Verizon repeats and realleges each and every allegation above, and incorporates them by reference as though fully set forth herein.

60.     Defendants' intrastate switched access tariffs on file with the State Commission constitute contracts between Defendants and any purchaser of services from those tariffs, which includes Verizon.

61.     Defendants have charged, and continue to charge, Verizon switched access charges on wireless intraMTA calls that do not qualify for such charges, in violation of their respective intrastate access tariffs.

62.     Defendants are in breach of their respective state tariff provisions when they bill Verizon for wireless intraMTA calls, as they do not qualify for such charges.  To the extent the tariffs purport to allow such charges, they are unenforceable.

63.     As a direct and proximate result of Defendants' conduct as alleged above, Verizon has been damaged in an amount to be proven at trial.

## COUNT NO. 5.

### Breach of Contract/Intrastate Wireless IntraMTA Calling (Florida)

### (Against US LEC OF FLORIDA LLC; WINDSTREAM NORTH CAROLINA, LLC)

64.     Verizon repeats and realleges each and every allegation above, and incorporates them by reference as though fully set forth herein.

65.     Defendants' intrastate switched access tariffs on file with the State Commission constitute contracts between Defendants and any purchaser of services from those tariffs, which includes Verizon.

66.     Defendants have charged, and continue to charge, Verizon switched access charges on wireless intraMTA calls that do not qualify for such charges, in violation of their respective intrastate access tariffs.

67.     Defendants are in breach of their respective state tariff provisions when they bill Verizon for wireless intraMTA calls, as they do not qualify for such charges.  To the extent the tariffs purport to allow such charges, they are unenforceable.

68.     As a direct and proximate result of Defendants' conduct as alleged above, Verizon has been damaged in an amount to be proven at trial.

## COUNT NO. 6.

## Breach of Contract/Intrastate Wireless IntraMTA Calling (Maryland)

## (Against US LEC OF MARYLAND LLC)

69.     Verizon repeats and realleges each and every allegation above, and incorporates them by reference as though fully set forth herein.

70.     Defendants' intrastate switched access tariffs on file with the State Commission constitute contracts between Defendants and any purchaser of services from those tariffs, which includes Verizon.

71.     Defendants have charged, and continue to charge, Verizon switched access charges on wireless intraMTA calls that do not qualify for such charges, in violation of their respective intrastate access tariffs.

72.     Defendants are in breach of their respective state tariff provisions when they bill Verizon for wireless intraMTA calls, as they do not qualify for such charges.  To the extent the tariffs purport to allow such charges, they are unenforceable.

73.     As a direct and proximate result of Defendants' conduct as alleged above, Verizon has been damaged in an amount to be proven at trial.

## COUNT NO. 7.

### Breach of Contract/Intrastate Wireless IntraMTA Calling (North Carolina)

**(Against ATLANTIC TELEPHONE MEMBERSHIP CORPORATION; CAROLINA TELEPHONE AND TELEGRAPH COMPANY LLC; CENTRAL TELEPHONE COMPANY; CENTRAL TELEPHONE COMPANY OF NORTH CAROLINA; MEBTEL, INC.; CITIZENS TELEPHONE COMPANY; NORTH STATE TELEPHONE COMPANY; NORTH STATE TELEPHONE COMPANY; RANDOLPH TELEPHONE MEMBERSHIP CORPORATION; SKYLINE TELEPHONE MEMBERSHIP CORPORATION; STAR TELEPHONE MEMBERSHIP CORPORATION; SURRY TELEPHONE MEMBERSHIP CORPORATION; US LEC OF NORTH CAROLINA LLC; WILKES TELEPHONE MEMBERSHIP CORPORATION; WINDSTREAM CONCORD TELEPHONE, INC; WINDSTREAM LEXCOM COMMUNICATIONS, INC.; WINDSTREAM NORTH CAROLINA, LLC; THE YADKIN VALLEY TELEPHONE MEMBERSHIP CORPORATION)**

74.     Verizon repeats and realleges each and every allegation above, and incorporates them by reference as though fully set forth herein.

75.     Defendants' intrastate switched access tariffs on file with the State Commission constitute contracts between Defendants and any purchaser of services from those tariffs, which includes Verizon.

76.     Defendants have charged, and continue to charge, Verizon switched access charges on wireless intraMTA calls that do not qualify for such charges, in violation of their respective intrastate access tariffs.

77.     Defendants are in breach of their respective state tariff provisions when they bill Verizon for wireless intraMTA calls, as they do not qualify for such charges.  To the extent the tariffs purport to allow such charges, they are unenforceable.

78.     As a direct and proximate result of Defendants' conduct as alleged above, Verizon has been damaged in an amount to be proven at trial.

## COUNT NO. 8.

### Breach of Contract/Intrastate Wireless IntraMTA Calling (South Carolina)

### (Against COMPORIUM, INC.; UNITED TELEPHONE COMPANY OF THE CAROLINAS LLC; WINDSTREAM NORTH CAROLINA, LLC)

79.     Verizon repeats and realleges each and every allegation above, and incorporates them by reference as though fully set forth herein.

80.     Defendants' intrastate switched access tariffs on file with the State Commission constitute contracts between Defendants and any purchaser of services from those tariffs, which includes Verizon.

81.     Defendants have charged, and continue to charge, Verizon switched access charges on wireless intraMTA calls that do not qualify for such charges, in violation of their respective intrastate access tariffs.

82.     Defendants are in breach of their respective state tariff provisions when they bill Verizon for wireless intraMTA calls, as they do not qualify for such charges.  To the extent the tariffs purport to allow such charges, they are unenforceable.

83.     As a direct and proximate result of Defendants' conduct as alleged above, Verizon has been damaged in an amount to be proven at trial.

## COUNT NO. 9.

### Breach of Contract/Intrastate Wireless IntraMTA Calling (Tennessee)

### (Against SKYLINE TELEPHONE MEMBERSHIP CORPORATION)

84.     Verizon repeats and realleges each and every allegation above, and incorporates them by reference as though fully set forth herein.

85.     Defendants' intrastate switched access tariffs on file with the State Commission constitute contracts between Defendants and any purchaser of services from those tariffs, which includes Verizon.

86.     Defendants have charged, and continue to charge, Verizon switched access charges on wireless intraMTA calls that do not qualify for such charges, in violation of their respective intrastate access tariffs.

87.     Defendants are in breach of their respective state tariff provisions when they bill Verizon for wireless intraMTA calls, as they do not qualify for such charges.  To the extent the tariffs purport to allow such charges, they are unenforceable.

88.     As a direct and proximate result of Defendants' conduct as alleged above, Verizon has been damaged in an amount to be proven at trial.

## COUNT NO. 10.

### Breach of Contract/Intrastate Wireless IntraMTA Calling (Nevada)

### (Against CENTRAL TELEPHONE COMPANY; CENTRAL TELEPHONE COMPANY OF NORTH CAROLINA)

89.     Verizon repeats and realleges each and every allegation above, and incorporates them by reference as though fully set forth herein.

90.     Defendants' intrastate switched access tariffs on file with the State Commission constitute contracts between Defendants and any purchaser of services from those tariffs, which includes Verizon.

91.     Defendants have charged, and continue to charge, Verizon switched access charges on wireless intraMTA calls that do not qualify for such charges, in violation of their respective intrastate access tariffs.

92.     Defendants are in breach of their respective state tariff provisions when they bill Verizon for wireless intraMTA calls, as they do not qualify for such charges.  To the extent the tariffs purport to allow such charges, they are unenforceable.

93.     As a direct and proximate result of Defendants' conduct as alleged above, Verizon has been damaged in an amount to be proven at trial.

## COUNT NO. 11.

### Breach of Contract/Intrastate Wireless IntraMTA Calling (Nevada)

### (Against CITIZENS TELEPHONE COMPANY)

94.     Verizon repeats and realleges each and every allegation above, and incorporates them by reference as though fully set forth herein.

95.     Defendants' intrastate switched access tariffs on file with the State Commission constitute contracts between Defendants and any purchaser of services from those tariffs, which includes Verizon.

96.     Defendants have charged, and continue to charge, Verizon switched access charges on wireless intraMTA calls that do not qualify for such charges, in violation of their respective intrastate access tariffs.

97.     Defendants are in breach of their respective state tariff provisions when they bill Verizon for wireless intraMTA calls, as they do not qualify for such charges.  To the extent the tariffs purport to allow such charges, they are unenforceable.

98.     As a direct and proximate result of Defendants' conduct as alleged above, Verizon has been damaged in an amount to be proven at trial.

## COUNT NO. 12.

### Declaratory Relief

### (All Defendants)

99.    Verizon repeats and realleges each and every allegation above, and incorporates them by reference as though fully set forth herein.

100.    The invoices the Defendants submit to Verizon seeking to collect interstate and/or intrastate switched access charges on wireless intraMTA calling are improper.  The inclusion of these access charges in bills submitted to Verizon violates the Defendants' interstate and intrastate access tariffs, the Communications Act, and the FCC's implementing rules.

101.    Verizon has informed Defendants that it disputes and will withhold payment of all intrastate and interstate switched access charges billed to Verizon for wireless intraMTA traffic. Verizon has demanded that future bills exclude wireless intraMTA traffic from billing, and that if future bills do not appropriately reflect the required billing adjustment, Verizon will withhold payment for such charges based on its calculation.

102.    Defendants have not agreed to adjust future billings as demanded.  Accordingly, an actual controversy now exists between Verizon and Defendants as to the proper manner of billing access charges to Verizon in the future.

103.    Verizon is entitled to judgment under 28 U.S.C. § 2201(a) declaring that:

a.    Verizon is not responsible for paying interstate and intrastate switched access charges on wireless intraMTA calls;

b.    Defendants must either accept Verizon's methodology, or establish a different but lawful methodology, for determining the portion of traffic that is wireless intraMTA traffic and hence not subject to switched access charges.

25099045.1

## PRAYER FOR RELIEF

**WHEREFORE**, for the reasons stated above, Verizon respectfully requests that judgment be entered for Verizon on each and all of its claims, together with appropriate damages, reasonable costs and fees, including attorneys' fees and expert fees, and interest together with such other and further relief as the Court may deem just and equitable under the circumstances.

This 17th day of November, 2014.

PENRY RIEMANN PLLC

/s/ Neil A. Riemann
J. Anthony Penry, NC Bar # 8936
Neil A. Riemann, NC Bar # 19258
1330 Saint Mary's Street, Suite 260
Raleigh, North Carolina 27605
Telephone: (919) 833-9449
Facsimile: (919) 516-0880
andy.penry@penryriemann.com
*Attorneys for Plaintiffs MCI
COMMUNICATIONS SERVICES, INC. and
VERIZON SELECT SERVICES INC.*

25099045.1